IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO.: 3:25-cr-1 |
| v. | Honest Services Wire Fraud, 18 U.S.C. §§ 1343, 1346, 2; Federal Program Bribery, 18 U.S.C. §§ 666(a)(1)(b) and 2; Money Laundering Conspiracy, 18 U.S.C. § 1956(h); Obstruction of Justice, 18 U.S.C. § 1512; Obstruction of Justice, 18 U.S.C. § 1519; Forfeiture, 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) |
| RAY MARTINEZ, | |
| and | |
| JENIFER O'NEAL, | |
| Defendants. | |

## INDICTMENT

**THE GRAND JURY CHARGES THAT:**

All dates and times in this Indictment are alleged to be "on or about" the specific date stated, and all amounts are alleged to be "approximately." At all times material to this Indictment:

### GENERAL ALLEGATIONS

1.      The Virgin Islands Police Department ("VIPD") is the law enforcement agency of the United States Virgin Islands ("USVI"), and has jurisdiction anywhere in the USVI territory. It is commanded by the Police Commissioner, who is subject to the authority of the Governor of the USVI.

2.      The USVI received, during each year from 2022 through 2024, benefits in excess of $10,000 under a federal program involving a grant, subsidy, guarantee, and other form of federal assistance.

3.      The functions and duties of the USVI Police Commissioner include, but are not limited to, administering the police force of the USVI under the direction of the Governor of the

*United States v. Martinez, et al.*
*Indictment*

USVI; supervising the preparation of all payrolls and vouchers for expenditures on account of the police force; and being responsible for the safe-keeping and proper accounting for all monies received by the police force.

4.    The Virgin Islands Office of Management and Budget ("VI-OMB") is an agency of the USVI. It is led by the Director of the Office of Management and Budget, who is subject to the authority of the Governor of the USVI.

5.    The responsibilities of the Director of VI-OMB include, but are not limited to, assisting USVI departments and agencies in the preparation and execution of program budget plans, program budget requests, and reporting of program performance.

6.    Defendant RAY MARTINEZ ("MARTINEZ") is the former Virgin Islands Police Department Commissioner. MARTINEZ was appointed to this role by the Governor of the United States Virgin Islands in July 2021 and served in the role until on or about June 16, 2024. As the VIPD Commissioner, MARTINEZ was an agent of the USVI, and exercised substantial influence over the administration of contracts between the VIPD and vendors in the USVI. Beginning in at least November 2022 and continuing through at least June 2024, Defendant MARTINEZ agreed to and did accept at least $110,358 in bribes, including equipment and labor for a restaurant owned by MARTINEZ, flights to Boston and rooms at a Boston hotel, expensive meals and entertainment, from David Whitaker, a government contractor who is charged elsewhere. In exchange for the bribe payments and things of value, defendant MARTINEZ agreed to, and did perform official acts in his capacity as the VIPD Commissioner.

7.    Defendant JENIFER O'NEAL ("O'NEAL") is the former Director of the Virgin Islands Office of Management and Budget. O'NEAL was appointed to this role by the Governor

*United States v. Martinez, et al.*
*Indictment*

of the USVI in February 2019 and served in the role until on or about June 17, 2024.  As Director

of VI-OMB, O'NEAL was an agent of the USVI, and exercised substantial influence over the

administration of contracts between agencies of the USVI, including VIPD, and vendors in the

USVI. Beginning in at least January 2024, and continuing through at least June 2024, Defendant

O'NEAL agreed to and did accept at least $17,730 in bribes from David Whitaker, a government

contractor who is charged elsewhere. In exchange for the bribe payments, defendant O'NEAL

agreed to, and did perform official acts in her capacity as the Director of the Virgin Islands Office

of Management and Budget.

8.    The laws of the USVI set forth ethical standards of conduct for USVI employees

that prohibited the use of public office for private gain. These ethical standards of conduct

generally prohibited USVI public officials from using his or her office for improper advancement

of his or her own, or his or her family's, personal or financial interests or the interest of any person.

These laws further prohibited public officials from soliciting or accepting money or other benefits

or advantages for himself or herself or another person for doing any act or omitting to do any act

in the performance of his or her functions as a public official.

9.    As public officials of the USVI, MARTINEZ and O'NEAL owed a fiduciary duty

to the USVI and the citizens of the USVI to perform the duties and responsibilities of their office

free from corrupt influence.

10.    David Whitaker, charged elsewhere, operated Mon Ethos Pro Support, LLC (Mon

Ethos or MEPS), a cyber-security firm he established in the USVI, as a government contractor for

the VIPD and other government entities.    Whitaker also operated a subsidiary of Mon Ethos called

Office of Data Discovery Forensic Analysis (ODDFA).

3

*United States v. Martinez, et al.*
*Indictment*

**COUNTS ONE THROUGH FIVE**
**18 U.S.C. §§ 1343, 1346, 2**
*(Honest Services Wire Fraud Scheme)*

### I.    The Scheme to Defraud

11.    From in or around November 2022, through in or around June 2024, in the District of the Virgin Islands, defendants RAY MARTINEZ and JENIFER O'NEAL, devised and intended to devise a scheme and artifice to defraud and to deprive the Virgin Islands and the citizens of the Virgin Islands of their intangible right to the honest services of, defendant MARTINEZ, the Virgin Islands Police Department Commissioner, and defendant O'NEAL, Director of VI-OMB.

### A.    The Purpose of the Scheme

12.    The purpose of the scheme was for defendant MARTINEZ to unlawfully benefit and enrich himself by accepting bribes from David Whitaker.

13.    The purpose of the scheme was for defendant O'NEAL to unlawfully benefit and enrich herself by accepting bribes from David Whitaker.

### B.    The Manner and Means of the Scheme

14.    The manner and means by which defendants MARTINEZ and O'NEAL carried out the scheme included, but were not limited to, the following:

15.    Defendant MARTINEZ, corruptly solicited, demanded and accepted, things of value from Whitaker, including, but not limited to, all-expense-paid trips to Boston, Massachusetts; tickets to sporting events; paid-for dinners; cash payments from Whitaker; tuition payments for MARTINEZ's family members; rent payments for MARTINEZ's family home; payments for materials and construction for MARTINEZ's restaurant. MARTINEZ solicited, demanded, accepted, and agreed to accept money and other things of value, in exchange for

4

*United States v. Martinez, et al.*
*Indictment*

agreeing to take, and taking, official action for Whitaker, and as opportunities arose, including authorizing and facilitating the payment of invoices for Whitaker's companies; advising, pressuring, and directing VIPD officials to authorize and facilitate the payment of invoices for Whitaker's companies; and authorizing and facilitating the award of a sole-source contract to Whitaker.

16.    Defendant O'NEAL, corruptly solicited, demanded and accepted, things of value from Whitaker, including, the payment of a lease for O'NEAL's restaurant. O'NEAL solicited, demanded, accepted, and agreed to accept money and other things of value, in exchange for agreeing to take, and taking, official action for Whitaker, including authorizing the payments of invoices for Whitaker's companies, and pressuring, advising, and directing OMB officials to facilitate the payment of invoices for Whitaker's companies.

17.    MARTINEZ, through a variety of means, concealed the scheme, and attempted to conceal the scheme, including, but not limited to, by directing Whitaker to pay restaurant vendors and contractors directly for payments for materials and construction for MARTINEZ's restaurant; accepting cash from Whitaker; directing Whitaker to pay MARTINEZ's spouse for tuition payments for MARTINEZ's family members and for rent for MARTINEZ's family home.

18.    To further conceal the scheme and bribe payments from Whitaker to MARTINEZ, MARTINEZ and Whitaker falsified, manufactured, and created false records, including drafting a memorandum for a purported show called "Steak Out," and MARTINEZ drafted a purported promissory note for a $10,500 rent payment Whitaker paid to MARTINEZ in August 2023.

19.    To further conceal the scheme, O'NEAL directed Whitaker to pay the lease for her restaurant directly to the landlord.

5

*United States v. Martinez, et al.*
*Indictment*

### C. Acts in Furtherance of the Scheme

20.     The acts caused by MARTINEZ and O'NEAL in furtherance of the scheme, included, but were not limited to, the following:

***MARTINEZ Agrees to Facilitate Payments for Whitaker's Companies in Exchange for Bribes***

21.     In or about November 2022, Whitaker met with MARTINEZ at MARTINEZ's restaurant to discuss outstanding invoices for work done for the VIPD by Whitaker's companies. MARTINEZ told Whitaker that he could not focus on Whitaker's invoices because MARTINEZ was spending all his time trying to get his new restaurant up and running.  Whitaker offered to help MARTINEZ with his restaurant if MARTINEZ would agree to help get Whitaker's outstanding invoices paid. MARTINEZ agreed and Whitaker began purchasing equipment for MARTINEZ's restaurant.

22.     On November 28, 2022, Whitaker purchased $3,656.74 worth of equipment for the restaurant, and on December 14, 2022, Whitaker purchased $1,443.85 worth of additional equipment for the restaurant.

23.     Whitaker continued to provide payments to MARTINEZ for labor and supplies to MARTINEZ's restaurant throughout the first half of 2023.

24.     After Whitaker made the initial two purchases of equipment for MARTINEZ's restaurant, and to disguise and conceal the nature of these payments, Whitaker drafted a memorandum explaining that he and MARTINEZ were entering into an agreement to make a show called "Steak Out."   The premise of the "show" was that MARTINEZ would cook in his restaurant and discuss closed cases that he worked on in the past.   This memo was originally drafted on

*United States v. Martinez, et al.*
*Indictment*

March 28, 2023, and signed by both parties on April 1, 2023. The memo was created with the intent to conceal the nature of Whitaker's payments to MARTINEZ.

25.    From April 5, 2023, through June 27, 2023, Whitaker wired money payments of $27,214.28 to MARTINEZ's spouse and a construction company for construction costs and supplies for the restaurant.

26.    In or around May 2023, MARTINEZ traveled to Boston for personal reasons. In furtherance of the scheme, Whitaker paid for flights for himself and MARTINEZ to and from Boston and for a stay at a suite in a Boston hotel from May 15, 2023, through May 20, 2023.   The room cost $14,911.95 and the flights cost $1,550.03 per person.

27.    In or about August 2023, MARTINEZ again needed to travel to Boston, Massachusetts for personal reasons. Whitaker again paid for flights for himself and MARTINEZ to and from Boston, which were $1,396.23 each. Whitaker also again paid for both him and MARTINEZ to stay at a suite in the same Boston hotel they stayed in April 2023.   The total hotel cost for this second Boston trip was $22,586.86. Whitaker also paid for MARTINEZ's expenses on this trip, including a dinner for the two of them at a steakhouse that cost $1,082.71.

28.    After returning to the USVI from Boston in August 2023, MARTINEZ complained to Whitaker that he could not afford rent payments for his new home and solicited Whitaker for money to help MARTINEZ pay for this rent. Whitaker agreed to pay for the rent and, wired $11,500 to MARTINEZ's wife on August 17, 2023. As part of this money wire transfer, Whitaker included the memo line "Reimbursement of Exp. For Steak Out."   In reality, there were no outstanding expenses for "Steak Out," and this statement was an attempt to conceal the true reason for Whitaker's payment to MARTINEZ, which was to pay MARTINEZ's rent for his family home.

*United States v. Martinez, et al.*
*Indictment*

29.    On September 4, 2023, Whitaker purchased a barbeque grill for MARTINEZ at MARTINEZ's request.   The total price for the grill, including shipping, was $4,567.93.

30.    During the period from when the scheme commenced in November 2022, and prior to the award of the sole source contract discussed below, and while Whitaker was providing MARTINEZ the above-described things of value, including wire payments for MARTINEZ's rent, payments for MARTINEZ's restaurant business, trips to Boston, and the barbeque grill, MARTINEZ, in his official capacity, authorized and signed for, or directed others to authorize, the payment of 13 invoices submitted by Whitaker's businesses to the USVI for approximately $1,359,000 in funds that were paid by the USVI to Whitaker's businesses. Specifically, to facilitate the payments of the invoices, MARTINEZ approved the final invoices submitted to the VIPD by Whitaker and submitted them for payment.   MARTINEZ personally signed these invoices or instructed his deputy to sign on his behalf.   Once these invoices were signed, MARTINEZ instructed someone in his office to submit them to VI-OMB to be processed.

### MARTINEZ Facilitates the Award of a Sole Source Contract for Whitaker, and the Continuing Payment of Invoices, in Exchange for Bribes

31.    Throughout 2023, Whitaker attempted to obtain a sole-source contract with the VIPD to provide technical case support for criminal investigations.   Whitaker asked MARTINEZ to help him obtain a $5 million, multi-year contract for this work. MARTINEZ agreed to help Whitaker obtain a yearly contract that could be renewed annually.

32.    On or about July 28, 2023, Whitaker submitted a bid for a one-year contract with a performance period of October 1, 2023, through September 30, 2024.   This contract was for a total of $1,489,683.   In his official capacity as VIPD Commissioner, MARTINEZ approved this contract on August 1, 2023. The Governor of the USVI formally signed the contract on October

*United States v. Martinez, et al.*
*Indictment*

10, 2023. Payments under this contract were paid from the use of American Rescue Plan Act ("ARPA") funds.

33.    On October 15, 2023, Whitaker called MARTINEZ to discuss the approval of outstanding invoices owed under the new sole-source contract that MARTINEZ approved earlier that year. MARTINEZ responded that he needed to work on his restaurant but that he will make sure to get the Mon-Ethos invoices "fast-tracked" after focusing on work required at his restaurant. Whitaker agreed to help MARTINEZ with any finances needed for the restaurant. Whitaker texted MARTINEZ later in the day to remind MARTINEZ to approve the payment. MARTINEZ's Deputy approved the payment later that day.

34.    The next day, October 16, 2023, MARTINEZ called Whitaker and told him that private school for his two sons cost approximately $4,100 per month. MARTINEZ told Whitaker that he wanted Whitaker to start paying for this expense. Whitaker paid this amount in October 2023. Whitaker also paid $4,100 for the children's tuition in December 2023 and February 2024. Whitaker sent all of these tuition payments directly to MARTINEZ's spouse's bank account.

35.    In November 2023, MARTINEZ again needed to travel to Boston, Massachusetts for personal reasons. On October 30, 2023, Whitaker purchased first class tickets for himself and MARTINEZ to return to Boston. On November 1, 2023, Whitaker reserved a similar suite at the same Boston hotel that he and MARTINEZ stayed at previously. Whitaker texted the hotel confirmation details to MARTINEZ. MARTINEZ responded by text saying, "Not concerned with room confirmation. More concerned with Butler Service Confirmation."

### MARTINEZ and Whitaker Inflate Contract Invoices to Pay for Bribe Payments

36.    On November 3, 2023, Whitaker called MARTINEZ and informed him that

9

*United States v. Martinez, et al.*
*Indictment*

Whitaker did not have the money to cover the trip to Boston later that month.   Whitaker suggested

that since the VIPD invoice for that month had not been signed, that MARTINEZ approve extra

money be added to the invoice to cover the expenses and have "some extra money in the kitty."

MARTINEZ agreed to authorize the inflated invoice on the November 3, 2023, phone call with

Whitaker:

| *Whitaker:* | And if you don't care, what I think I-what I'd like to do is since Mario has not signed that invoice an' got all these expenses-- |
| *MARTINEZ:* | Oh uh huh |
| *Whitaker:* | --coming up... |
| *MARTINEZ:* | [Unintelligible] sign that shit my damn self. |
| *Whitaker:* | Yeah, can I just send you a new one and add a little to it? |
| *MARTINEZ:* | Yeah, that's-that's fine. |
| *Whitaker:* | With um all the stuff we've gotta pay for going up there and everything I'd just like to get some extra money in the-in the kitty. Especially if it's gonna be around the fifteenth, it would be-be nice to have. |
| *MARTINEZ:* | Yeah, I'm good with that. |

37.    Later in the conversation, the two said the following:

| *Whitaker:* | So on Monday I'll tell you what I'll do, before you leave I'll redo that invoice and I'll fix it so that you can electronically sign it, so just sign it on your phone and then I'll sed it over to umm Sandra to save some steps and then she can umm get it Jenifer. |
| *MARTINEZ:* | You can do that. |
| *Whitaker:* | Okay, appreciate it. |

38.    Whitaker subsequently withdrew the original October 29, 2023 invoice, which was

for approximately $285,000, and resubmitted the invoice for a total of approximately $325,000.

On November 6, 2023, while on a recorded call with Whitaker, MARTINEZ digitally signed the

updated invoice.   During that call, Whitaker again noted that "I appreciate you doing this by the

way with the… with-you know, the extra month where we had to wait and then the expenses we've

got with, you know, Boston and then the restaurant and all the stuff."

10

*United States v. Martinez, et al.*
*Indictment*

39.    On December 7, 2023, Whitaker called MARTINEZ to ask about the price of his children's tuition.   MARTINEZ confirmed that the total was $4,100.   Whitaker told MARTINEZ that he will add the school tuition payment to the bottom of his upcoming invoice and send it for his approval.   Whitaker added an extra line item at the bottom of the November invoice for $4,100 of miscellaneous expenses and sent it to MARTINEZ for approval.   MARTINEZ confirmed receipt, signed the invoice in his official capacity as VIPD Commissioner, and told Whitaker to send the signed documents to VI-OMB.

***O'Neal Joins the Scheme and Accepts a Bribe in Exchange for Approving an Inflated Invoice***

40.    On January 1, 2024, MARTINEZ called Whitaker on a recorded call to discuss wanting to get his restaurant up and running for Carnival in March.   MARTINEZ complained that he needed more money to get equipment just to get the restaurant open.   Whitaker stated that the December invoice would be small so it could be inflated to add the restaurant equipment. MARTINEZ directed Whitaker to do exactly that:

**MARTINEZ**: We have got to get the restaurant up by the second week of March.

**Whitaker**: Okay

**MARTINEZ**: Got to, got to, got to.   The end of March is carnival so we have to be open for carnival because that is where we will do the best to start recouping some of these monies and more importantly getting the exposure.   I have to find a way to get through the finances this month but um....just to get it open, I'm sorry, to get the equipment because it is going to take two or three weeks for them and that's just sitting in a warehouse.

**Whitaker**: Yeah

**MARTINEZ**: Some have to be ordered and take four to five weeks

**Whitaker**: We still need to, well two things, one we can increase the amount of the invoice if you want and try to, um, like I said its going to be small this month

*United States v. Martinez, et al.*
*Indictment*

**MARTINEZ**: Okay.   Let's do that, let's do that

**Whitaker**: Okay.   And the second thing, we still need to sit down with your list because there are the drop downs so we still have to get certain.

**MARTINEZ**: Yeah, let's, you know what um, I don't know what you are doing tomorrow afternoon but when I get in I go straight over to my office

**Whitaker**: Okay

**MARTINEZ**: Sign some documents and stuff.   I don't know if you wanna drop in and we can do a couple of things.   Maybe start taking a look at that list tomorrow

**Whitaker**: Yeah, I can come by.

41.     MARTINEZ called Whitaker on January 9, 2024, and confirmed that Whitaker could increase the December invoice to cover equipment for MARTINEZ's restaurant.   Whitaker agreed and asked MARTINEZ how much to increase the invoice.   MARTINEZ instructed Whitaker to increase the invoice by $70,000.   Whitaker agreed and offered to give MARTINEZ $5,000 until that was paid:

| *MARTINEZ:* | The um--what I-what I was t-gonna tell you is um I know we had spoken about increasing the um... the December invoice so that-- |
| *Whitaker:* | Okay. |
| *MARTINEZ:* | --we could order equipment um so are you still open to that? Cause I really need to get-- |
| *Whitaker:* | Yeah. |
| *MARTINEZ:* | --this shit going man. So-- |
| *Whitaker:* | I can do that-- |
| *MARTINEZ:* | --uh... yeah let's go ahead and uh increase it and uh so we can get that stuff done. And I'll um I'll put both of them through tomorrow. |
| *Whitaker:* | Okay, how much you want me to put on there? |
| *MARTINEZ:* | Uh... uh I mean you gotta tell me. You know, the stuff that I sent you was um... I don't remember what-stuff out of the-the inbo-the inbox [whistles] the cart. |
| *Whitaker:* | I think that came to-- |
| *MARTINEZ:* | Was um... |
| *Whitaker:* | --yeah go ahead. |

12

*United States v. Martinez, et al.*
*Indictment*

| | |
|---|---|
| **MARTINEZ:** | Seventy some thousand I think? |
| **Whitaker:** | Okay, that's with everything um… o-on there? From that day-- |
| **MARTINEZ:** | Yeah. |
| **Whitaker:** | --I know there was some drop downs and things, so… Okay, I'll put that on there and then um… if we have-- |
| **MARTINEZ:** | Yes. |
| **Whitaker:** | --I-you know I might have-- until we get paid I might have, you know, five grand or so that I can throw towards stuff right away and then when we get that we can just order it. |
| **MARTINEZ:** | Ah man, David, five grand doesn't even pay for one piece of equipment, let's hold that shit-- |
| **Whitaker:** | Mm. |
| **MARTINEZ:** | --until-unless you can-for something comes up and you need that shit like an emergency day fund. |
| **Whitaker:** | Okay. |
| **MARTINEZ:** | So if we can um… since it's-since it's through the stuff from Jenifer, um I should be able to push that through quickly. |
| **Whitaker:** | Okay. |

42.    On January 11, 2024, MARTINEZ called Whitaker and asked if there was a way to add money to the January payment to give O'NEAL a "gift" of "maybe ten or fifteen thousand bucks." Whitaker mentioned that he didn't want to make O'NEAL "feel funny about it" and MARTINEZ suggested that that was why he wanted the money to come from MARTINEZ. MARTINEZ specifically asked if the money could be provided in cash.

43.    On January 14, 2024, Whitaker recorded a lunch meeting with O'NEAL. During this meeting, Whitaker told O'NEAL that MARTINEZ wanted to make sure that that $15,000 was added to the next invoice for O'NEAL and that a total of $70,000 was added to the invoice. O'NEAL stated that she did not need the money owed to her in cash, but that Whitaker could buy things for her indirectly and pay for them.

*United States v. Martinez, et al.*
*Indictment*

44.    On January 16, 2024, MARTINEZ relayed a conversation he had with O'NEAL to Whitaker, in which MARTINEZ confirmed that he had told O'NEAL that he could get her at least $10,000 in the next couple weeks.

45.    Immediately, after this call with MARTINEZ, Whitaker called O'NEAL.   During that call, O'NEAL confirmed that MARTINEZ was going to give her $10,000, paid for by an inflated invoice submitted to VI-OMB by Whitaker. In response to that comment, the following exchange occurred:

| | |
|---|---|
| *Whitaker:* | Ray said he was gonna-Ray said he told you he was gonna give you ten. He's asking 15 from me. See I-I told you he's gonna take some of it. [Laughs] |
| *O'NEAL:* | [Unintelligible] he did tell me ten. |
| *Whitaker:* | Yeah I know right. [Laughs] What's he doing, taking a commission? |
| *O'NEAL:* | I guess. |
| *Whitaker:* | [Laughs] |
| *O'NEAL:* | [Unintelligible] |
| *Whitaker:* | Oh goodness. |
| *O'NEAL:* | Yeah... he's uh he's you know... but you know, for me whatever it is, I am-I am grateful. |
| *Whitaker:* | That was funny though. I'm not gonna catch him in that one, but he let that slip. |
| *O'NEAL:* | Yep, but you know it's okay. It's okay. We get that moving and... I gave-I gave Fari a task to uh look for some um training. Barista training that we could do. |

46.    On Saturday, January 20, 2024, Whitaker texted O'NEAL and asked, "Do you know if the VIPD invoice for $216k has processed? Ray may never speak to us again if we leave before he gets the 70k for his [sic] the food shop. Especially if I tell him we're going to the [Boston hotel] and a game lol [two laughing emojis]."   O'NEAL replied that she would check with her staff.

*United States v. Martinez, et al.*
*Indictment*

47.     Approximately four minutes later, O'NEAL texted a member of her staff saying "Good afternoon…if you guys have ARPA payments pending to be processed, please get them entered so that they can make Tuesday's check run.   Please also follow up with DOF on the premium pay and anything else ARPA related…"    That OMB official, who reported to O'NEAL, responded that she would make sure the payments went out.   O'NEAL followed up again to confirm that the OMB official needed to check that those that were approved that week also went out.   The OMB official subsequently approved the outstanding invoice on either January 22 or January 23, 2024, for the inflated amount.

48.     On January 30, 2024, MARTINEZ asked Whitaker if Whitaker still had the five grand referenced in paragraph 41.   Whitaker replied that the whole seventy grand from the payment of the inflated invoice was available now.   MARTINEZ told Whitaker he needed $4,100 sent to his wife for his kids' tuition, as set forth below:

| | |
|---|---|
| ***MARTINEZ:*** | You know what I could use if…Do you still have that five grand? I could umm, I could use some help with the kids' tuition. |
| ***Whitaker:*** | Yeah, well that seventy grand is in there so, whatever you need. Umm just… |
| ***MARTINEZ:*** | Okay. |
| ***Whitaker:*** | Let me know and I'll… |
| ***MARTINEZ:*** | Yeah, I need uhh, I need uhh forty one hundred sent to Diana for the umm, or somehow gotten to us for the kids' tuition |
| ***Whitaker:*** | Alright, I'll do that right now. |
| ***MARTINEZ:*** | Cool. |
| ***Whitaker:*** | She should have it in a little bit. |

49.     On February 1, 2024, Whitaker wired the money as instructed.

50.     On February 10, 2024, Whitaker called O'NEAL and discussed her coffee shop. During that conversation, Whitaker said that MARTINEZ had instructed him to "get that seventy

*United States v. Martinez, et al.*
*Indictment*

grand on that invoice" and that the money is still just sitting there not being used. Whitaker

mentioned later in the call that the seventy grand in the account had come from the inflated invoice.

51.    On March 13, 2024, MARTINEZ met with Whitaker and asked him to order

equipment for the restaurant. Whitaker stated that he could only order equipment for the restaurant

in approximately $10k increments. MARTINEZ then instructed Whitaker to buy a vent hood for

a stove to be installed in MARTINEZ's restaurant first. Whitaker and MARTINEZ purchased the

hood together on the phone on March 14, 2024. The vent hood and related accessories cost

$12,515.39.   The forgoing is captured in the following recorded discussion:

| | |
|---|---|
| ***Whitaker:*** | Umm, so the equipment. Out here in the boondocks, I need to do ten grand - 10k at time, so can you put down the first 10k that's the most important and I'll order that tonight or in the morning. |
| ***MARTINEZ:*** | Uhh for 10k? |
| ***Whitaker:*** | Yep. |
| ***MARTINEZ:*** | Uhh go ahead and order the umm, the vent, the first vent. Whichever the most expensive one is. |
| ***Whitaker:*** | Okay, will do. |
| ***MARTINEZ:*** | Yeah, I think that's the 10 foot one. |
| ***Whitaker:*** | Okay. |
| ***MARTINEZ:*** | The 10 foot one, yeah, place that order first. |

52.    On April 6, 2024, Whitaker, O'NEAL, and MARTINEZ all met at Whitaker's

office in St. Thomas. During the recorded meeting, Whitaker presented a FirstBank statement

showing the remainder of the $70,000 that was paid to Whitaker from the inflated invoice

submitted to VI-OMB for payment. During this meeting, O'NEAL mentioned that the lease

payment for her coffee shop was due the next week. MARTINEZ said to take the money out of

the remaining balance and pay for O'NEAL's lease payment. O'NEAL agreed and asked for a

copy of the spreadsheet with the balance information from Whitaker. During that discussion,

*United States v. Martinez, et al.*
Indictment

O'NEAL and MARTINEZ specifically discussed how to get the money to O'NEAL in a way that it would not be "traceable" as set forth below:

| | |
|---|---|
| *Whitaker:* | So when do you have to sign your lease? |
| *O'NEAL* | The lease will be signed next week. I won't be here, but it will be signed uhh and sent back so. |
| *Whitaker:* | So do we take twenty out of this or out of the... Where we going to take? |
| *O'NEAL:* | It's seventeen, it's eighteen... |
| *Ray MARTINEZ:* | For the lease? |
| *Whitaker:* | And just replace it later? |
| *Ray MARTINEZ:* | So let's take the umm, take the, so take twenty out of this for her lease... |
| *Whitaker:* | Okay |
| *Ray MARTINEZ:* | ...and then we put it back in later. On the back end. |
| *Whitaker:* | Okay. |
| *O'NEAL:* | Yeah so yeah, it's like eighteen. Seventeen, seventeen something. Almost eighteen. |
| *Whitaker:* | Okay. That works. |
| *Ray MARTINEZ:* | Yeah. So what I'll do is I'll I'll go. When I go home today, or maybe tomorrow is a better day when I have a little more time, I'll ask my wife if she'll take away some of my honey-do list and let me play around with my umm stuff here. So if we take this out, umm like I said it was seventy, took out the twelve, so that took it down to fifty some odd, so it's it's fine. We'll play around with it. |
| *Whitaker:* | We just need to get the numbers totaled so we can put it on the the bill for umm... |
| *Ray MARTINEZ:* | That's fine. |
| *Whitaker:* | VIPD and then we can move it around as we need to. |
| *Ray MARTINEZ:* | Yeah, so so that so that J. could get the lease signed because once you sign the lease you got to pay the seventeen. |
| *Whitaker:* | Well that's fine. That's in this [Taps table], right? So we don't have.. |
| *Ray MARTINEZ:* | That's what I'm saying, to sign the lease you have to have the eighteen available to to pay down the lease. So take the eighteen out of here [taps table]. |
| *Whitaker:* | Yeah. That work? |
| *O'NEAL:* | Okay. Alright umm put that in Excel and send it to me. Please and Thanks.<br>[Laughter] |
| *Whitaker:* | [Laughing] Jafari! |
| *O'NEAL:* | You know what... |
| *Ray MARTINEZ:* | You guys don't do Word? I'm just kidding. |
| *O'NEAL:* | [laughing] |
| *Ray MARTINEZ:* | Tables? You know? |

*United States v. Martinez, et al.*
Indictment

| Whitaker: | Do you want me – So for this umm… |
|---|---|
| Ray MARTINEZ: | So this fifty, fifty-one… |
| Whitaker: | For your lease, do you want it to be wired to your business Jenifer or what are we? What's what we do to get you what you need for that? For… |
| O'NEAL: | Mmmm, Yeah I guess. Umm |
| Ray MARTINEZ: | Hey man, let me get I need a pen in my car. |
| Whitaker: | I got a box of those if you need some and the cool thing is they got a highlighters on the end. |
| Ray MARTINEZ: | Yeah, I'm not going to be highlighting anything |
| Whitaker: | Yours is broken. |
| O'NEAL: | I got to figure out how that… because you know I don't like traces of anything so. Wire means it's traced. |
| Whitaker: | So how's the easiest way to do this that is not traceable. [Laughter] Ray, you're the expert on… |
| Ray MARTINEZ: | Everything is traceable. |
| O'NEAL: | Everything is traceable. |
| Whitaker: | Pay umm… Oh that's Dwight, give me a minute. |
| O'NEAL: | Except cash – cash is not traceable. |
| Ray MARTINEZ: | Yeah, the problem with that is depositing the cash. These banks around here, every time you go to deposit five grand, it's like… |
| O'NEAL: | "Where'd you get that from?" |
| Ray MARTINEZ: | Yeah. |
| Whitaker: | Let me get uhh Dwight are you guys leaving or what? …Charlie maybe directly… [Phone ringing drowns out noise. Whitaker leaves room with recorder] |

53.    On April 8, 2024, Whitaker texted O'NEAL to confirm the final amount for the lease.   O'NEAL confirmed that the amount was $17,730.   This payment was for O'NEAL's lease deposit, which included a security deposit and two month's rent. Whitaker wired the $17,730 to O'NEAL's landlord on April 15, 2024, with the memo line "Payment for Jenifer O'NEAL for YHG Required Lease Deposits and Payments by David Whitaker."

***MARTINEZ Attempts to Conceal his Bribes after Federal Authorities Approach Him***

54.    In June 2024, the Federal Bureau of Investigation (FBI) obtained search warrants for MARTINEZ's and O'NEAL's cellular telephones. These search warrants were executed on

18

*United States v. Martinez, et al.*
*Indictment*

June 12, 2024. During the execution of the search warrants, MARTINEZ and O'NEAL were served with subpoenas as part of a federal grand jury investigation to produce documents related to the investigation.

55.     On June 13, 2024, MARTINEZ, after being approached by the FBI, told Whitaker that he was going to go to a friend's house and draft an IOU/promissory note to conceal the rent payment Whitaker provided to MARTINEZ in August 2023. During the discussion, MARTINEZ references a $10,500 rent payment even though Whitaker provided MARTINEZ $11,500 in funds. On a recorded call later that day, MARTINEZ told Whitaker that "your story is that...I gave you um a copy of the document and you don't know what you did with it." That quote comes from the following conversation:

**Whitaker**: I don't have any-whatever document you did today, I don't have.

**MARTINEZ**: Right, well that's fine. That's-the thing is, your story is that... I gave you um a copy of the document and you don't know what you did with it.

**Whitaker**: Okay.

**MARTINEZ**: But with the promissory note that I will pay back $10,500 in five increments.

**Whitaker**: Okay. And that was after you open the shop, right?

**MARTINEZ**: After I open the shop, yes.

**Whitaker**: Okay, and then um how many pages is it?

**MARTINEZ**: Promissory note?

**Whitaker**: Yeah.

**MARTINEZ**: It's a paragraph.

*United States v. Martinez, et al.*
*Indictment*

**Whitaker**: Okay. Was there any other documents other than Steak Out that we signed that I should…

**MARTINEZ**: No just th-just Steak Out and I signed the promissory note, you can't recall if you signed it but you know you had a copy of it.

**Whitaker**: Okay. Alright, I'm trying not to write any of this stuff down so I'm just going through—

**MARTINEZ**: Don't don't don't don't.

**Whitaker**: --I don't wanna sound, you know, stupid, I'm um

56.     On June 14, 2024, MARTINEZ called Whitaker, and MARTINEZ read the promissory note he drafted to Whitaker over the phone.   MARTINEZ instructed Whitaker that if Whitaker was questioned about the payment that Whitaker was just "helping as a friend because I was in dire financial strains. Well not dire, but I was in, you know, having difficulty."   That quote comes from the following conversation regarding the fake promissory note:

**MARTINEZ**: So, let me read this promissory note to you before my son comes into the car from camp.

**Whitaker**: Okay.

**MARTINEZ**: Alright. Uh "I, Ray A. MARTINEZ, acknowledge I borrowed $10,500 from David Whitaker for the purpose of first, last, and security deposit for my family move to 1-35 Estate Wintberg, St. Thomas. I promise to repay the sum of $10,500 in five equal payments of $2,100 on the 15th of each month beginning 90 days after Don Felito's Cookshop is open for business. Every month the payment is late, after the 20th day of the month, a $210 penalty will be assessed. I, Ray A. MARTINEZ, also acknowledge that David Whitaker will provide a loan for four months of tuition assistance towards my sons' 2023-2024 Antilles school year in the amount of $4,100 per month for a total of $16,400. I promise to repay the sum of $1,640 on the 15th of each month, beginning 90 days after Don Felito's Cookshop is open for business. Every month the payment is late, a $164 penalty will be assessed." And it's just signed by me [UI] so your name's not on it cause it's a promissory note from me, see what I'm saying?

*United States v. Martinez, et al.*
*Indictment*

**Whitaker**: Gotcha, so I wouldn't have had to sign it?

**MARTINEZ**: Correct, I would just give you a copy.

**Whitaker**: Okay.

**MARTINEZ**: So now what um… So what… we need to talk about is the fact that if you're questioned about that, it's that we… because it was for the rental of the house… and my kids' tuition… you were helping as a friend because I was in dire financial strains. Well not dire, but I was in, you know, having difficulty. And um that's why it's a loan, so I could pay it back, because it had nothing to do with the business, you see what I'm saying?

**Whitaker**: Nothing to do with the… um restaurant?

**MARTINEZ**: It has nothing-right it has nothing to do with the restaurant, so that's why you had to-you gave me that as a loan.

**Whitaker**: Did I give it to you personally or it's from the bus-from my business?

**MARTINEZ**: No those are the wire. Those are the wires. Those are the wires.

**Whitaker**: So it'd come from Mon Ethos then.

**MARTINEZ**: Right.

**Whitaker**: Okay.

**MARTINEZ**: Now however you come up with it, that's on you.

**Whitaker**: Okay.

**MARTINEZ**: But, for me, you see what I'm saying?

**Whitaker**: Yep, you just got the money.

**MARTINEZ**: Correct.

**Whitaker**: Okay, that makes sense.

*United States v. Martinez, et al.*
*Indictment*

> **MARTINEZ:** You see what I'm saying? So why you paid it out of Mon Ethos, I can't tell you where to pay from, it's a loan you loaned money to me and it would come back to you. So it wasn't like it was a gift or just given to me or anything like that.

> **Whitaker:** Okay.

> **MARTINEZ:** So, you know, the um... the... the... restaurant stuff-sorry the-the house stuff... was five payments and the tuition was ten payments... Once you get back on island I'll get you a copy of this anyway, you know, I'll be able to get you a copy of this.

57.    On June 26, 2024, MARTINEZ's attorney provided to United States federal investigators a response to the grand jury subpoena that contained the fraudulently created promissory note.   The promissory note was signed by MARTINEZ and back-dated to August 15, 2023.

58.    Also on June 13, 2024, MARTINEZ called Whitaker to discuss what the FBI would be looking for when they came after Whitaker.   During that call, MARTINEZ instructed Whitaker to transfer some information to a new phone and then destroy the old phone.   MARTINEZ also instructed Whitaker to destroy his laptop computer.   MARTINEZ further instructed Whitaker to write MARTINEZ's new number down somewhere and keep it somewhere "small enough that can't fit a phone, so the FBI can't search it."

59.    The conversation below captures MARTINEZ instructing Whitaker to destroy his computer:

> **Whitaker:** Well let me think through this. So... me and you are the only ones that would know that, there's two different invoices... I don't have any backup to show it but I could just--I [UI] go in and figure all that out.

> **MARTINEZ:** Yeah but what-why-what-what would make them raise an eyebrow at the two invoices that were just sent from me to you? Or you to me? That's it?

*United States v. Martinez, et al.*
*Indictment*

**Whitaker**: Yeah that's it. And then we talked to uh… on one of them we talked to Jenifer about it. But I don't-- I don't know that there was anything sent like that. We just talked about it.

**MARTINEZ**: Um…

**Whitaker**: Lotta new computers out.

**MARTINEZ**: Huh?

**Whitaker**: Maybe I just wanted to get a new computer.

**MARTINEZ**: Yeah des-destroy it. Destroy it bro.

**Whitaker**: If you think that it's the safest thing to do then…

**MARTINEZ**: Yeah. Because if we-- I mean if-if someone asked the question why was the invoice changed, right? Um why can't you just say that, you know, after you sent in the invoice to me, which is what you usually do anyway… you saw that there was an error… and you, you know, you corrected the error. What-what's wrong with that?

**Whitaker**: Yeah the only thing I can think of is if Jenifer says something different on this last one. Cause we talked about it in that meeting at my office where we were talking about the, you know, the-- her rent. The [UI] I think.
**MARTINEZ**: The three of us?

**Whitaker**: I think Max just dropped a plate.

**MARTINEZ**: Um destroy it David.

**Whitaker**: Okay.

**MARTINEZ**: Yeah destroy it.

**Whitaker**: There's a lot on there.

**MARTINEZ**: [UI]

*United States v. Martinez, et al.*
*Indictment*

**Whitaker:** It's our trips, it's, you know, our-it's the email-- there's stuff on there about the... um camera deal, not the camera deal, the um... the gun camera stuff, there's just a lot on there.

**MARTINEZ:** Yeah but they're gonna-- that-that's all just regular business stuff.

**Whitaker:** Yeah I just don't -- so we just gotta make sure that it's the right story. I mean if we get rid of it it's...

**MARTINEZ:** No no no, I mean what I'm saying is if-if the only thing that raises an eyebrow is the fact that you changed an invoice, right?

**Whitaker:** Yeah I just-- I mean it was so-it's one thing if Jenifer is on the same page, right? Cause we've got-now we know, but what if Jenifer says they said they were changing that invoice...

**MARTINEZ:** Then how would she know that we changed the invoice?

**Whitaker:** When we were sitting in the room that day I-we had that invoice out talking about it and we said we're gonna change it for her.

**MARTINEZ:** Nah that's her word against ours. We don't know what the hell she's talking about. She didn't keep a copy of the invoice.

**Whitaker:** Okay.

60.    The below conversation captures MARTINEZ instructing Whitaker to destroy his phone:

**MARTINEZ:** Well I mean they're gonna have access to all those things on your phone anyway, right?

**Whitaker:** Well you had said get rid of the phone, so I was planning on—

**MARTINEZ:** Yeah.

**Whitaker:** --dumping all my phones and getting new numbers for here. Like we had talked about. I tried to get to AT&T tonight and then I thought better go with a different provider.

*United States v. Martinez, et al.*
*Indictment*

**MARTINEZ:** Right. Um…

**Whitaker:** So you know with like Apple you can trade in your phone right? So…

**MARTINEZ:** Yeah.

**Whitaker:**   I thought if I—

**MARTINEZ:** The thing though-the thing though is um does it raise eyebrows if you dump the last work number you had?

**Whitaker:** I think there's so many problems with… well I can get-I can get an iPhone for um the work cause I've been using an Android and people know I hate it. And that wouldn't transfer, I'd just start over with that and then for Liberty, get new numbers for my other phone, or just don't get another phone and just have one iPhone and then the phone we're talking on.

…

**MARTINEZ:** Yeah do what you were saying, switch all the phones out and get rid of all that just… I'm tired of Liberty and blah blah blah blah.
Whitaker says he could switch to an iPhone from his Android and the data wouldn't copy over, so he could start fresh.

**MARTINEZ:** Make the switch to the iPhone and um just [UI] that's-that's a Android phone.

**Whitaker:** Yeah.

**MARTINEZ:** So when they-so once you destroy the Android phone they don't access to it-they access to that [UI]—

## II.    The Execution of the Scheme

61.    On or about each of the dates set forth below, in the District of the Virgin Islands and elsewhere, defendants RAY MARTINEZ and JENIFER O'NEAL, for the purpose of executing the above-described scheme and artifice to defraud and deprive, knowingly transmitted, and caused to be transmitted, by means of wire and radio communication in interstate commerce,

25

*United States v. Martinez, et al.*
*Indictment*

the signals and sounds described below for each count, each transmission constituting a separate

count:

| Count | Date | Wire Description | Defendant(s) |
|---|---|---|---|
| 1 | 12/28/2022 | Electronic transmission received by Mon Ethos from the Government of the USVI's First Bank account into Mon Ethos's First Bank account xx0410 for $20,018.10 | MARTINEZ |
| 2 | 10/23/2023 | Electronic transmission received by Mon Ethos from the Government of the USVI's First Bank account into Mon Ethos's First Bank account xx0410 for $372,420.75 | MARTINEZ |
| 3 | 12/1/2023 | Electronic transmission received by Mon Ethos from the Government of the USVI's First Bank account into Mon Ethos's First Bank account xx0410 for $325,912.00 | MARTINEZ |
| 4 | 1/26/2023 | Electronic transmission received by Mon Ethos from the Government of the USVI's First Bank account into Mon Ethos's First Bank account xx0410 for $216,100.00 | MARTINEZ AND O'NEAL |
| 5 | 4/15/2024 | Electronic transmission received by Yacht Haven Grande's Banco Popular account xx1176 from Mon Ethos's First Bank Account xx1016 for $17,730 | MARTINEZ AND O'NEAL |

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

## COUNT SIX
### 18 U.S.C. §§ 666 (a)(1)(B) and 2
*(Bribery Concerning Programs Receiving Federal Funds)*

62.    The allegations in paragraphs 1 through 61 of this Indictment are realleged and

incorporated by reference as if fully set forth herein.

63.    Beginning on or about November 2022, and continuing through on or about June

2024, in the District of the Virgin Islands, Defendant RAY MARTINEZ, the VIPD Commissioner

at the time and an agent of the USVI, did knowingly and corruptly solicit, demand, accept and

26

*United States v. Martinez, et al.*
*Indictment*

agree to accept, something of value from another person, that is payments from Whitaker paid for

restaurant equipment, construction costs for MARTINEZ's restaurant, tuition payments for

MARTINEZ's children, rent for MARTINEZ's home, and travel and entertainment, intending to

be influenced and rewarded, in connection with a business, transaction and series of transactions

of the United States Virgin Islands that involved $5,000 or more, and as opportunities arose, that

is: authorizing and facilitating the payment of invoices for Whitaker's companies; advising,

pressuring, and directing VIPD officials to authorize and facilitate the payment of invoices for

Whitaker's companies; and authorizing and facilitating the award of a sole-source contract to

Whitaker.

All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.


### COUNT SEVEN
### 18 U.S.C. §§ 666 (a)(1)(B) and 2
*(Bribery Concerning Programs Receiving Federal Funds)*

64.    The allegations in paragraphs 1 through 61 of this Indictment are realleged and

incorporated by reference as if fully set forth herein.

65.    Beginning on or about January 2024, and continuing through on or about June 2024,

in the District of the Virgin Islands, Defendant JENIFER O'NEAL, the Director of VI-OMB at

the time and an agent of the USVI, did knowingly and corruptly solicit, demand, accept and agree

to accept, something of value from another person, that is lease payments paid for by Whitaker for

O'NEAL's restaurant, intending to be influenced and rewarded, in connection with a business,

transaction and series of transactions of the United States Virgin Islands that involved $5,000 or

more, and as opportunities arose, that is: authorizing the payments of invoices for Whitaker's

*United States v. Martinez, et al.*
*Indictment*

companies, and pressuring, advising, and directing OMB officials to facilitate the payment of invoices for Whitaker's companies.

All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

**COUNT EIGHT**
**18 U.S.C. § 1956(h)**
*(Money Laundering Conspiracy)*

66.     The allegations in paragraphs 1 through 61 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

67.     Beginning no later than January 2024 and continuing until at least April 2024, in the District of the Virgin Islands and elsewhere, the Defendants, RAY MARTINEZ and JENIFER O'NEAL, together with others known and unknown, did knowingly and unlawfully combine, conspire, confederate, and agree together and with each other to commit offenses in violation of Title 18, United States Code, Section 1957(a).

68.     The manner and means by which the defendants and others carried out the conspiracy included, but were not limited to, the acts described in paragraphs 14 through 19, and the financial transactions described in paragraphs 40 through 47, and 50 through 53.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNT NINE**
**18 U.S.C. § 1512(b)(2)(B)**
*(Obstruction of Justice)*

69.     The allegations in paragraphs 1 through 61 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

70.     On or about June 13, 2024, in the District of the Virgin Islands, Defendant, RAY MARTINEZ, did corruptly persuade another person, and attempted to do so, with the intent to

28

*United States v. Martinez, et al.*
*Indictment*

cause or induce that person to alter, destroy, mutilate, and conceal a record, document, or other object, with the intent to impair the object's integrity or availability for use in an official proceeding, specifically MARTINEZ directed Whitaker to destroy his phone and computer to prevent their search in connection with a federal grand jury investigation.

All in violation of Title 18, United States Code, Section 1512(b)(2)(B).

## COUNT TEN
### 18 U.S.C. § 1519
*(Obstruction of Justice)*

71.     The allegations in paragraphs 1 through 61 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

72.     Beginning on or about June 13, 2024, and continuing thereafter until on or about June 26, 2024, in the District of the Virgin Islands, Defendant RAY MARTINEZ, did knowingly alter, falsify, and make a false entry in a record or document with the intent to impede, obstruct, and influence the investigation or proper administration of any matter Defendant knew or contemplated to be within the jurisdiction of any department or agency of the United States, that is, Defendant, RAY MARTINEZ, created a false document, that is, a falsified promissory note, and caused that document to be produced to the United States Attorney's Office for the District of the Virgin Islands, a department or agency of the United States Department of Justice, in connection with a federal grand jury investigation.

All in violation of Title 18, United States Code, Section 1519.

*United States v. Martinez, et al.*
*Indictment*

## FORFEITURE NOTICE

73.    The factual allegations of paragraphs 1 through 61, and the allegations contained in Counts One through Eleven of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 982(a)(1), 981(a)(1)(C), 1961(1)(B) and 28 U.S.C 2461(c).

74.    Upon conviction of any of the offenses in violation of Title 18, United States Code, Sections 666(a)(1)(B), 1343, 1512(b)(2)(B), 1519, 1957(a) and 1956(h), in Counts One through Eleven of this Indictment, the defendant

### RAY MARTINEZ

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 982(a)(1), and 981(a)(1)(D), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s).   The property to be forfeited includes, but is not limited to, the following:

    a.    A Halifax EXHP 1048 Type 1 Commercial Kitchen Hood System – 10" x 48" including its parts as follows:
    (1) Side Curtains: Half Height Side Curtains (48")
    (2) Fire Suppression: Kidde Fire Suppression System for 10' Hoods
    (3) Wall Panels: (3) 48" x 84" uninsulated stainless-steel panels

    b.    A red grill discussed above in paragraph 29.

75.    Forfeiture may include a money judgment in the amount of $128,088.79 against defendants RAY MARTINEZ and JENIFER O'NEAL individually, for any portion of the gross proceeds attributed to each defendant and obtained from the fraud offenses in Counts One through Eleven that cannot be recovered.

30

*United States v. Martinez, et al.*
*Indictment*

76.    If any of the property described above, as a result of any act or omission of the defendant[s]:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

*United States v. Martinez, et al.*
*Indictment*

Dated: January 8, 2025

DELIA L. SMITH
United States Attorney

By: _____

Michael J. Conley
Assistant United States Attorney
United States Attorney's Office
District of the Virgin Islands
5500 Veteran's Drive, Suite 260
St. Thomas, USVI 00802
Telephone: (340) 774-5757

COREY R. AMUNDSON
Chief, Public Integrity Section

Alexandre Dempsey
Steven Loew
Trial Attorneys
Public Integrity Section
1301 NY Ave. NW, Tenth Floor
Washington, DC 20530
Telephone: (202) 305-3063

DISTRICT COURT OF THE VIRGIN ISLANDS: Returned into the District Court this 8th day of January, by Grand Jurors and filed. 2025

EMILE A. HENDERSON III
United Sates Magistrate Judge
District of the Virgin Islands

32